UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANILO PURUGGANAN,<br>        *Plaintiff*, | No. 3:20-cv-00360 (KAD) |
| v. | |
| AFC FRANCHISING, LLC,<br>        *Defendant.* | May 13, 2020 |

MEMORANDUM OF DECISION RE:
DEFENDANT'S MOTION TO DISMISS (ECF NO. 22)

Kari A. Dooley, United States District Judge:

Plaintiff Danilo Purugganan ("Purugganan," or the "Plaintiff") brought this action against

Defendant AFC Franchising, LLC ("AFC" or the "Defendant") seeking, *inter alia*, injunctive and

declaratory relief as well as monetary damages in connection with AFC's alleged breach of a

Master Development Agreement (the "MDA") entered into between the Plaintiff and AFC's

predecessor-in-interest, Doctors Express Franchising LLC ("Doctors Express"). Pending before

the Court are the Plaintiff's motion for a preliminary injunction (ECF No. 12) and motion to

expedite discovery in this matter (ECF No. 15), to which the Defendant has filed opposition briefs

(ECF Nos. 31 and 30, respectively) and to which the Plaintiff has filed replies. (ECF Nos. 33 and

32, respectively.) Also pending before the Court is AFC's motion to dismiss for improper venue

on the basis of a forum selection clause included in the MDA (ECF No. 22), which it urges the

Court to resolve as a threshold matter and before permitting the Plaintiff to undertake his requested

discovery. Purugganan has filed an opposition to the motion to dismiss (ECF No. 29) in which he

asserts that the forum selection clause is not enforceable in these circumstances, to which AFC has

1

filed a reply (ECF No. 35) and Purugganan has filed a sur-reply with the Court's permission.  (ECF

No 38.)  For the reasons that follow, the motion to dismiss is DENIED.

**Relevant Allegations**

On August 26, 2009, Purugganan executed the MDA as well as a franchise agreement with

Doctors Express, through which he acquired the exclusive right to develop and manage Doctors

Express Urgent Care franchises in Sullivan and Westchester Counties, New York and Fairfield

County, Connecticut in exchange for a $189,000 fee.  (Compl. ¶¶ 5–9, 12, ECF No. 1.)

Subsequently, in April 2013, AFC acquired all of Doctors Express's assets and obligations,

including an assignment of the MDA and franchise agreements.  (*Id*. ¶¶ 13–14.)  Purugganan

alleges that AFC has contracted to purchase four franchises developed and managed by

Purugganan in his Fairfield County territory, with the intent to transform them into AFC corporate

stores, in violation of the MDA.  (*Id*. ¶¶ 21–24.)  He seeks an order enjoining AFC from

consummating these purchases, which he asserts will deprive him of the sales revenues to which

he is entitled under the MDA and impede the development of other franchises within his territory.

The MDA includes a "Consent to Jurisdiction" provision, which states:

> You and your owners agree that all actions arising under this Agreement or otherwise as a
> result of the relationship between you and us must be commenced in a state or federal court
> of competent jurisdiction within such state or judicial district in which we have our
> principal place of business at the time the action is commenced, and you (and each owner)
> irrevocably submit to the jurisdiction of those courts and waive any objection you (or the
> owner) might have to either the jurisdiction of or venue in those courts.  Nonetheless, you
> and your owners agree that we may enforce this Agreement in the courts of the state or
> states in which you are domiciled, the Master Developer Business is located, where the
> Headquarters is located or where you operate (or operated) any Doctors Express Urgent
> Care Business.

(MDA ¶ 19.7, ECF No. 1-1.)  Doctors Express's principal place of business was in Maryland

(Compl. ¶ 43) and AFC's principal place of business is in Alabama.  (*Id.* ¶ 2.)

The MDA also contains a choice of law clause which provides:

Except to the extent governed by the United States Trademark Act of 1946 . . . or other federal law, this Agreement and all claims arising from the relationship between us and you will be governed by the laws of the State of Maryland, without regard to its conflict of laws rules, except that any Maryland law regulating the sale of franchises or business opportunities or governing the relationship of a franchisor and its franchisee will not apply unless its jurisdictional requirements are met independently without reference to this paragraph.

(MDA ¶ 19.6.)

AFC moves to dismiss on the grounds that the forum selection clause requires that this litigation take place in the State of Alabama.

**Standard of Review**

While AFC seeks dismissal for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), the Supreme Court has "held that generally 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens,*' rather than Rule 12(b)." *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (quoting *Atl. Marine Const. Co. v. United States Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)). "This clarification of the proper procedural vehicle for enforcing a forum selection clause, however, does not appear to alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause." *Id.* "In deciding a motion to dismiss for *forum non conveniens,* a district court normally relies solely on the pleadings and affidavits, though it may order limited discovery. *Id.* (citations omitted). "Similarly, in evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits, but must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant." *Id*. at 216–17 (citations omitted).

"[W]hen a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the

3

alternative forum proposed by the defendants; and (3) the balance between the private and public

interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)

(*per curiam*). "Where the parties have contractually selected a forum, however, the forum

selection clause substantially modifies the *forum non conveniens* doctrine." *Id*. (alterations

omitted). "Instead, a district court must consider three factors in determining whether the

presumption of enforceability applies to a forum selection clause: whether (1) the clause was

reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or

permissive; and (3) the claims and parties to the dispute are subject to the clause." *Id*. Satisfaction

of these factors creates a presumption of enforceability, which can be overcome at step four by "a

sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause

was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (quotation

marks and citations omitted).

**Discussion**

Because the Defendant's motion turns on the interpretation and enforceability of the

MDA's forum selection clause, as indicated above, the Court's assessment of the four inquiries set

forth by the Second Circuit supplants the traditional inquiry undertaken in a *forum non conveniens*

analysis. Federal common law governs the fourth inquiry, and the Second Circuit has assumed

without deciding that federal common law likewise applies to the first inquiry. *Starkey v. G

Adventures, Inc.*, 796 F.3d 193, 196 n.1 (2d Cir. 2015). "In answering the *interpretive* questions

posed by parts two and three of the four-part framework, however, [the Court] normally appl[ies]

the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217–

18. In this case, the MDA contains a choice-of-law clause specifying Maryland as the substantive

law to be applied. (MDA ¶ 19.6.) However, as the Defendant points out, Maryland has adopted

the federal standard in determining the enforceability of a forum selection clause, *see, e.g.*, *Davis Media Grp., Inc. v. Best W. Int'l, Inc.*, 302 F. Supp. 2d 464, 466 (D. Md. 2004), and the parties do not identify any differences in the substantive law of Maryland that preclude this Court from applying relevant federal precedent to the interpretive issues posed here, *see Martinez*, 740 F.3d at 223.  The Court will accordingly "apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause." *Id.* (quotation marks and citation omitted).

Here, the Court answers the inquiry at both steps one and three in the negative and therefore the clause does not enjoy the presumption of enforceability.[1]  With respect to the first inquiry, "[a] forum selection clause is reasonably communicated where it is phrased in clear and unambiguous language," and where it is included "within the main text of a contractual agreement." *Compuweigh Corp. v. Honeywell Int'l, Inc.*, No. 3:16-CV-01108 (VAB), 2016 WL 7197360, at *3 (D. Conn. Dec. 9, 2016) (quotation marks and citations omitted); *see also Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-CV-8089 (RJS), 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 Fed. Appx. 43 (2d Cir. 2015) ("A clause is reasonably communicated to a party where the party signs an agreement that explicitly directs the party to the clause").  Here, the MDA apprised Purugganan that suits arising out of or in connection with the MDA must be brought in the "state or judicial district in which *we* have *our* principal place of business at the time the action is commenced . . . ."  (MDA ¶ 19.7 (emphases added).)  The MDA defines "we," "us," or "our" as referring only to Doctors Express, without including any successors in interest, assignees or other persons or entities that might obtain a subsequent interest in the MDA.  (MDA at 1.)  Thus, the four corners of the MDA unambiguously establish that the parties agreed to litigate in the forum

---

[1] Purugganan also disputes the second factor—that the forum selection clause is mandatory – but the Court need not resolve this issue in light of its determination that the clause is not enforceable by AFC against Purugganan.

in which Doctors Express's principal place of business was located at the time the lawsuit was filed.

Indeed, there are no provisions in the MDA that notified the Plaintiff that if the agreement were assigned to another party, the Plaintiff also agreed that suit must be brought in the forum in which the assignee's principal place of business was located. "Although notice can be sufficient without explicitly naming the jurisdiction in which contracting parties agree to litigate, a forum selection clause must nonetheless allow the parties to predict with a reasonable degree of certainty where they may be haled into court." *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 582 (S.D.N.Y. 2016). While "[f]ederal courts thus generally enforce forum selection clauses tied to a party's principal place of business despite the risk that the party might relocate," they "have not, however, extended this principle to enforce forum selection clauses containing even more uncertainty[.]" *Id*.

AFC relies upon a series of cases in which courts upheld the validity of a so-called "floating forum selection clause" as a general matter. These cases are inapposite because in each involving an assignee, the forum selection clause expressly contemplated that the clause would apply equally with respect to the principal place of business of the assignee of a contracting party. *See e.g.*, *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 723 (6th Cir. 2006) (enforcing forum selection clause where "[t]he contract clearly stated that assignment was a possibility, and that in the event of assignment, any disputes would be governed by the laws of the state of incorporation of the assignee" and further provided that suit would be venued exclusively where the contracting party's or its assignee's principal place of business was located)*; IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606 (7th Cir. 2006) (upholding validity of identical forum selection clause); *IFC Credit Corp. v. Burton Indus., Inc.*, No. 04 C 5906, 2005 WL 1243404 (N.D. Ill.

May 12, 2005) (same); [2] *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 472 (D.N.J. 1998) (concluding that "where a forum-selection clause professing consent to jurisdiction in the state where a party's or its assignee's principal place of business lies is part of an agreement in a sophisticated business transaction, and one party to the agreement is a law firm, the forum-selection clause is valid absent fraud, serious inconvenience, or a violation of public policy, notwithstanding that the law firm was unaware of the assignee's principal place of business at the time of signing the agreement").

Accordingly, interpreting the MDA's forum selection clause as providing adequate notice to the Plaintiff that he might have to litigate in the forum of the principal place of business of some future, unknown assignee of Doctors Express is simply a bridge too far from what the case law will sustain.  The interpretation of the clause posited by the Defendant simply would not allow the Plaintiff "to predict with a reasonable degree of certainty where [he] may be haled into court." *Gordian Grp.*, 168 F. Supp. 3d at 582.

Even if the Court were to determine that the forum selection clause was reasonably communicated to the Plaintiff, moreover, the Court declines to find that AFC, as an assignee, is subject to the clause at step three of the analysis.  The Court acknowledges that the mere "fact a party is a non-signatory to an agreement" is not a basis "to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Rather, "where the alleged conduct of the non[signatories] is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be

---

[2] In *Secure Fin. Serv., Inc. v. Popular Leasing USA, Inc.*, 391 Md. 274, 285, 892 A.2d 571 (2006), the Maryland Court of Appeals confronted the validity of this very same forum-selection clause involving a New Jersey corporation called Norvergence Communications, Inc., which the court noted "has been the subject of much litigation around the country."  The court cited the conflicting outcomes this forum selection clause has generated in various state and federal courts without ultimately reaching the issue of its enforceability.

subject to forum selection clauses." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (quotation marks and citation omitted).  Accordingly, "[i]f successorship is established, a non-signatory is subject to the . . . presumption of the enforceability of mandatory forum selection clauses." *Aguas*, 585 F.3d at 701.  However, under the so-called "closely related test," "the relationship between the non-signatory and th[e] . . . signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Magi XXI*, 714 F.3d at 723.

Under the terms of the MDA and the circumstances presented here, AFC's enforcement of the forum selection clause was not, in any way, foreseeable to Purugganan.[3]  While the MDA contemplates that Doctors Express can assign this Agreement . . . to a third party without restriction" (MDA ¶ 15.1) and provides that it is binding upon the parties' "permitted assigns, and successors-in-interest" (MDA ¶ 19.9), as discussed above, the forum selection clause neglects to extend the phrase "our principal place of business" to an assignee of Doctors Express and in fact specifically confines the forum selection clause to the principal place of business of Doctors Express.  This case is therefore not akin to those instances where federal courts have held that an assignee of a contracting party was sufficiently "closely related" to the signatory to enforce a forum selection clause identifying a specific, unfluctuating forum.  *Cf. e.g.*, *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) (holding that defendant could invoke forum selection clause in agreement signed by its predecessor-in-interest requiring that disputes be litigated in the courts of England and Wales).

---

[3] There is no dispute that the Plaintiff had no pre-existing relationship with AFC and absolutely no role in the transaction by which AFC became an assignee under the MDA.

In sum, because it was not reasonably communicated to the Plaintiff that he agreed to suit in the jurisdiction in which an unknown and unidentified future assignee of Doctors Express has its principal place of business, and because enforcement of the forum selection clause by AFC was not sufficiently foreseeable to Purugganan to satisfy the closely related test, the forum selection clause is not entitled to a presumption of enforceability.  In addition, because it is "'unfair, unjust, or unreasonable to hold' parties to clauses that do not provide sufficient notice as to the forum being selected," *Gordian Grp.*, 168 F. Supp.3d at 582 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)), the Court would, for the same reasons, decline to enforce the forum selection clause at step four of the analysis.

**Conclusion**

For the foregoing reasons, AFC's motion to dismiss is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of May 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE