UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANILO PURUGGANAN,<br>    *Plaintiff*, | No. 3:20-cv-00360 (KAD) |
| v. | |
| AFC FRANCHISING, LLC,<br>    *Defendant.* | August 17, 2020 |

MEMORANDUM OF DECISION RE:
PLAINTIFF'S MOTION TO COMPEL DISCOVERY (ECF NO. 66)

Kari A. Dooley, United States District Judge:

Plaintiff Danilo Purugganan ("Purugganan," or the "Plaintiff") brought this action against Defendant AFC Franchising, LLC ("AFC" or the "Defendant") seeking injunctive and declaratory relief as well as monetary damages in connection with AFC's alleged breach of a Master Development Agreement (the "MDA") entered into between the Plaintiff and AFC's predecessor-in-interest, Doctors Express Franchising LLC.  Plaintiff asserts both common law and statutory causes of action.  The parties' familiarity with the already extensive procedural history of this matter is presumed.  Pending before the Court is Plaintiff's motion to compel responses to his discovery (ECF No. 66)—specifically, Requests for Production dated May 18, 2020 (ECF No. 66-3), Interrogatories dated May 18, 2020 (ECF No. 66-4), and Requests for Admissions dated June 3, 2020 (ECF No. 66-5).  AFC has objected to the vast majority of the discovery requests and the parties were unable to resolve their differences by agreement or compromise.  AFC has also filed an objection to the Plaintiff's motion to compel. (ECF No. 67.)  For the reasons that follow, Plaintiff's motion to compel is GRANTED in part and DENIED and part.

1

**Legal Standard**

      Rule 26 of the Federal Rules of Civil Procedure provides in relevant part that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "[R]elevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Peddy v. L'Oreal USA Inc.*, No. 18-CV-7499 (RA) (JLC), 2019 WL 3926984, at *1 (S.D.N.Y. Aug. 20, 2019) (quotation marks and citations omitted). "The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Lindsey v. Butler*, No. 11-CIV-9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017). "Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 49 (E.D.N.Y. 2018) (quotation marks and citation omitted); *see also In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2020 WL 1812801, at *2 (S.D.N.Y. Apr. 9, 2020) ("Proportionality, which focuses on the marginal utility of the discovery sought, goes hand-in-hand with relevance, such that the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate") (quotation marks and citation omitted). "Evidence that is irrelevant or may result in undue prejudice," on the other hand, falls "outside the scope of discovery." *Peddy*, 2019 WL 3926984, at *2 (quoting *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015)).

Rule 37 of the Federal Rules of Civil Procedure permits a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The Court has broad discretion in deciding a motion to compel discovery." *Metcalf v. Yale Univ.*, No. 15-CV-1696 (VAB), 2017 WL 627423, at *2 (D. Conn. Feb. 15, 2017) (citing *Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)). "If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016); *see also Komondy v. Gioco*, No. 3:12-CV-250 (CSH), 2015 WL 917867, at *3 (D. Conn. Mar. 3, 2015) ("[T]he objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden'") (quoting *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011)). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quotation marks and citation omitted).

**Discussion**

As noted above, the Plaintiff served Requests for Production, Interrogatories, and Requests for Admission on the Defendant. Outside of referring to the undisputed facts set forth in the parties' joint Rule 26(f) Report (ECF No. 42) and setting forth its own "Additional Stipulation of Facts," the Defendant only answered two Interrogatories, some of the Requests for Admission, and produced no documents. (*See* Def.'s Responses to Pl.'s Discovery Requests, ECF Nos. 66-6, 66-7, 66-8.) A meet and confer between counsel did not resolve the Defendant's objections and the instant motion to compel ensued.

As a preliminary matter, there has been some confusion as to the proper scope of discovery at this juncture in the litigation. When the Court entered the scheduling order following review of the parties' Rule 26(f) Report, the Court did not indicate whether the discovery contemplated was limited to the discovery needed in advance of the hearing on the motion for preliminary injunction. However, as discussed at the telephonic status conference on June 23, 2020, the Court did not intend to limit the scope of discovery in the near term and indicated that it would overrule any objections to discovery on this basis. Notwithstanding, in an effort to progress the case towards a hearing on the motion for preliminary injunction, the parties agreed, in the first instance, to see if an agreement could be reached as to some limited disclosures and/or depositions in advance of the hearing. It does not appear to the Court that any earnest effort was made in this regard and that the contentious and intractable approach to this litigation persists without reprieve. However, consistent with the goal of advancing this litigation toward a hearing on the motion for preliminary injunction, the Court decides herein ONLY that which must be provided in advance of such a hearing. The Court therefore does not construe the Defendant's objections as pertaining to discovery generally, but merely only as to whether these requests constitute appropriate discovery in advance of the preliminary injunction hearing. The Court leaves to another day, if necessary, resolution of additional discovery disputes.[1]

The Defendant's overarching objection is one of proportionality. AFC asserts that insofar as it has stipulated to the facts Plaintiff alleges in support of the purported breach of the MDA and

---

[1] AFC also seeks to limit discovery in light of the pending, though not yet decided, motion to dismiss a number of Plaintiff's claims for lack of subject matter jurisdiction. AFC has acknowledged, however, that it does not challenge the Court's subject matter jurisdiction over the contract claims and claims for equitable relief that are implicated by the Plaintiff's motion for a preliminary injunction. (*See* ECF No. 58-1 at 5 n.1.) Because AFC does not further distinguish its discovery objections on the basis of its challenges to Plaintiff's standing to assert alternative legal theories, the Court does not address at this stage whether discovery should be further limited based upon the legal contentions raised in AFC's motion to dismiss.

in particular the motion for preliminary injunction, any discovery as to those facts is irrelevant or disproportionate to the needs of the preliminary injunction hearing. The Defendant further asserts that the requests are vague, overly broad, and unduly burdensome. Plaintiff responds that the discovery he seeks goes to the question of irreparable harm, which is germane to his motion for preliminary injunctive relief and is therefore entirely appropriate.[2] He also asks this Court to ignore the Defendant's boilerplate objections.

The Defendant's effort to block wholesale the production of any records and the other discovery at issue on the basis that the stipulation renders such discovery disproportionate is misplaced. *See, e.g.*, *Anderson v. United Air Lines, Inc.*, 49 F.R.D. 144, 147 (S.D.N.Y. 1969) (finding that stipulation as to the accuracy of certain public records did not render interrogatory regarding similar matter objectionable). Further, the Court agrees with the Plaintiff that certain of the records and answers he seeks pertain to the issue of irreparable harm as well to the claim that AFC violated the covenant of good faith and fair dealing implicit in every contract. The Court also agrees with the Defendant, however, that the stipulation significantly limits the factual findings that need to be made, and that much of what the Plaintiff seeks is not necessary to the issues raised by the motion for preliminary injunction.[3] Yet rather than propose bases for

---

[2] "For a preliminary injunction to issue, the movant must establish '(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction.'" *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)). "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley*, 559 F.3d at 118 (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "[T]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id*. (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

[3] The Court further agrees that the question of whether a preliminary injunction should issue may turn on any number of legal issues raised by the Defendant which go to the Plaintiff's ability to establish a likelihood of success on the merits. These include: (a) whether the terms of the MDA prohibit AFC from purchasing franchises within Plaintiff's territory; (b) whether the choice of law provision in the MDA precludes claims brought under Connecticut statutory

narrowing the scope of the Plaintiff's requests, the Defendant has categorically refused to answer any of the propounded discovery outside of the responses identified above. The Plaintiff likewise may have limited the *number* of requests included in the motion to compel, but it does not appear that any effort was made to narrow the *scope* of the requests included. This all-or-nothing approach leaves to the Court, the party ***least*** familiar with the parties and the underlying facts, the determination of the proper scope of discovery. Accordingly, absent the parties' offer of reasonable (or any) proposals for limiting the discovery at issue, the Court crafts its own limitations to conform to that which is proportional and relevant to the preliminary injunction hearing. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) ("Of course, as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way."); *see also, e.g.*, *Rinaldi v. SCA La Goutte, D'Or*, No. 1:16-CV-01901 (VSB) (SDA), 2018 WL 722415, at *2 (S.D.N.Y. Jan. 31, 2018) (exercising discretion to narrow scope of discovery by modifying language of discovery requests). Within and mindful of the parameters set forth above, and having fully considered the parties' submissions, the Court orders as follows:

**Requests for Production**

The Defendant shall produce the records sought in Requests 2, 9 and 18, for the time period January 1, 2019 through the present,[4] on or before **September 16, 2020.** While Plaintiff additionally seeks production of Document Requests Nos. 3, 4, 5, and 6 on the basis that these Requests "all relate to the actions taken by Defendant to take over the franchises in the territory

---

law, such as the Connecticut Unfair Trade Practices Act ("CUTPA"); and (c) whether Plaintiff lacks Article III standing with respect to several of his claims.

[4] The Document Requests and Interrogatories seek discovery from January 1, 2017 to the present but it is not clear to the Court why the Plaintiff requires discovery over more than a three-year timeframe when the purchases at issue were announced in February 2020.

that Plaintiff had purchased and the irreparable damages sustained by Plaintiff" (Pl.'s Mem. at 6–7), the Court finds that not all of these Requests are germane to the effect of AFC's decisions regarding the four specific franchises in the Plaintiff's territory on the Plaintiff's rights and damages, and that they are therefore overbroad and disproportionate to the Plaintiff's needs at this stage.  For example, Request No. 2 seeks relevant information because it directly concerns the actions AFC has undertaken to purchase the franchises at issue, whereas Request No. 3 concerns AFC's decision to reject the offers of other prospective purchasers before the instant transactions ensued, and therefore implicates discovery into communications with non-parties to this litigation that may not have any bearing on the harm the Plaintiff contends he will suffer if these transactions are consummated.  While Plaintiff argues in his reply brief that he needs to know, *inter alia*, whether or not the terms of the third-party offers were similar to the contracts AFC ultimately executed with the franchise owners (ECF No. 69 at 2–3), the Court finds that absent a stronger showing of why such matters are likely to yield discoverable information regarding the harm to the Plaintiff individually, these requests pertain to matters too far afield from the relevant issues to warrant production at this time.

      Plaintiff also seeks production of Document Requests Nos. 7, 8, 11, and 20 on the grounds that they "relate to the issues concerning the Plan of Defendant to take over the franchises in Plaintiff's territory, which Defendant intended to then have managed by another Master Developer, Jim Brennan."  (Pl.'s Mem. at 7–8.)  However, some of these requests are facially overbroad and are so vague as to encompass a completely unknowable body of records.  For example, Request No. 7 asks for "all documents and phone records concerning Jim Brennan and the franchises that Dan Purugganan developed and monitors in Connecticut," without adequate temporal or any subject matter limitation.  Certain other Requests would seem to yield largely

duplicative or cumulative information and have been excluded on this basis. For example, Request No. 9 asks for all documents and phone records regarding AFC's potential plan to convert the franchises in Plaintiff's territory into corporate stores, while Request No. 11 asks for documents concerning how AFC plans to profit from these conversions—an issue that would appear to be covered by the broader language of Request No. 9. Likewise, Requests Nos. 4, 5, and 6 largely seek information that appears to be encompassed in Request No. 2.

**Interrogatories**

The Defendant shall answer Interrogatories 2, 3 and 9 on or before **September 16, 2020.**

**Requests for Admission**

The Defendant shall answer Requests 9, 10, 46 and 47 on or before **September 16, 2020.**

**Conclusion**

For the foregoing reasons, Plaintiff's motion to compel is GRANTED in part and DENIED in part. The Plaintiff's request for an award of expenses, to include either attorney's fees or costs, is DENIED. Federal Rule of Civil Procedure 37 "provides that when a motion to compel is granted, . . . 'the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[5] *Bennett v. Metro-N. R.R. Co.*, No. 3:19-CV-00081 (KAD), 2020 WL 2113589, at *2 (D. Conn. May 4, 2020) (quoting Fed. R. Civ. P. 37(a)(5)(A)). "But the court 'must not' make such an order if 'circumstances make an award of expenses unjust.'" *Id*. (quoting Fed. R. Civ. P. 37(a)(5)(A)(iii)). Here, it appears to the Court that both the Plaintiff and the Defendant contributed to the inevitability of this motion to compel, rendering an award unjust under the circumstances. *See, e.g.*, *Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15-CV-

---

[5] The Rule also provides that expenses may be apportioned in instances in which the motion to compel is granted in part and denied in part. *See*. Fed. R. Civ. P. 37(a)(5)(C).

01310 (JCH), 2016 WL 3911870, at *7 (D. Conn. July 15, 2016) (declining to award fees where defendant's motion to compel was granted in part but where the court found "that the intransigence of counsel for both sides contributed to the filing of the motion" and communications reflected counsels' unwillingness to compromise, thereby rendering award unjust).

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of August 2020.

<i>/s/ Kari A. Dooley</i><br>
KARI A. DOOLEY<br>
UNITED STATES DISTRICT JUDGE