UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANILO PURUGGANAN,<br>    *Plaintiff*, | No. 3:20-cv-00360 (KAD) |
| v. | |
| AFC FRANCHISING, LLC,<br>    *Defendant*. | December 2, 2020 |

**MEMORANDUM OF DECISION RE:
PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF NO. 95)**

Kari A. Dooley, United States District Judge:

    Plaintiff Danilo Purugganan ("Purugganan" or the "Plaintiff") seeks reconsideration of this Court's November 25, 2020 decision denying his motion for a temporary restraining order ("TRO") to enjoin Defendant AFC Franchising, LLC ("AFC" or the "Defendant") from closing on the purchase of certain urgent care franchises (the "Connecticut franchises") serviced and monitored by Purugganan until he can be heard at a December 14, 2020 hearing on his pending motion for a preliminary injunction. (*See* ECF No. 94.) In denying the Plaintiff's request for a TRO, the Court concluded that Purugganan failed to offer evidence of irreparable harm predicated on more than the Plaintiff's own speculation or conjecture as to the potential impact on his business. The Court therefore declined to issue a TRO to halt the closing of the Connecticut franchises, which AFC intends to acquire as part of a larger $32 million transaction involving other franchises and third parties that are not before this Court. The Court assumes the parties' familiarity with the underlying facts as identified in its prior memorandum of decision. For the reasons that follow, the Plaintiff's motion for reconsideration is DENIED.

1

**Standard of Review**

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "It is well-settled that a motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Young v. Choinski*, 15 F. Supp. 3d 194, 197 (D. Conn. 2014) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)) (internal quotation marks omitted). "If 'the moving party is seeking solely to relitigate an issue already decided,' the court should deny the motion for reconsideration and adhere to its prior decision." *Collins v. Blumenthal*, 581 F. Supp. 2d 289, 290 (D. Conn. 2008) (quoting *Shrader*, 70 F.3d at 257) (alterations omitted).

**Discussion**

Purugganan first argues that the Court improperly disregarded his declaration in finding that he had failed to demonstrate irreparable harm. In urging the Court to revisit its prior decision on this issue, he also submits excerpts from his deposition taken on October 27, 2020, which were not included in the initial motion for a temporary restraining order. The Court addresses these issues in turn.

First, the Plaintiff mischaracterizes the Court's decision when he asserts that the Court improperly discounted the Plaintiff's declaration or based its decision principally on the inadequacy of testimony presented via affidavit or declaration. Not so. The Court did not decline to find irreparable harm on the basis of the form of the evidence submitted by the Plaintiff. Indeed, the Court recognizes the propriety of submitting evidence by way of affidavit or declaration for purposes of seeking a temporary restraining order. Rather, the Court found the Plaintiff's declaration deficient in substance, as it offered only conjectural predictions of irreparable harm. In the absence of any evidence outside of the Plaintiff's own ill-explained and wholly conclusory declaration, the Court concluded that the Plaintiff had not carried his burden on this issue. In doing so the Court cited ample case law in which courts within this Circuit have declined to issue TROs and/or preliminary injunctions when faced with similarly conclusory or hypothetical averments as to the harm to a plaintiff's business interests. (*See* Decision at 7–10.) The Court would have reached the same conclusion had the Plaintiff presented deposition testimony that was identical in substance to that which was stated in the Plaintiff's declaration.

Second, in moving for reconsideration of the Court's denial of the motion for a TRO, the Plaintiff now asks the Court to review deposition testimony that was not presented to the Court in connection with the initial motion.[1] Purugganan's deposition testimony does provide context to

---

[1] At oral argument Plaintiff's counsel indicated that Purugganan would testify at the hearing on the motion for preliminary injunction in greater detail as to the irreparable harm that he would suffer. When asked by the Court why the Plaintiff had not included such details in his original TRO application, Plaintiff's counsel indicated that he thought Purugganan's declaration was sufficient at this stage. Plaintiff's counsel also offered to provide the Court with further evidence but the Court indicated that it was not inclined to keep the record open. The post-ruling submission of the Plaintiff's deposition testimony therefore reflects an effort to obtain "a proverbial 'second bite at the apple'" that is expressly prohibited on a motion for reconsideration. *See Kopperl v. Bain*, No. 3:09-CV-01754 (CSH), 2016 WL 310719, at *3 (D. Conn. Jan. 26, 2016) ("In order to succeed on a motion for reconsideration based on newly discovered evidence, the evidence must be truly newly discovered or . . . could not have been found by due diligence. . . . newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration") (internal citations and quotation marks omitted). The Court nonetheless addresses why the Plaintiff's deposition testimony does not alter the propriety of the Court's prior disposition.

his allegations of irreparable harm and offers some insight into the ways in which he is responsible to existing franchisees in his territory—including by helping them increase their revenue and build their respective businesses—for which he earns his royalty comprised of 2.5% of each franchisee's gross sales.  (*See* Pl.'s Dep. Tr. at 36:15–19; 37:4–25; 68:14–25; 69:1–8, 12–25, Pl.'s Ex. A, ECF No. 95-2.)  The testimony further illustrates the monitoring responsibilities that Purugganan fulfills for the franchises in his territory (*id*. at 70:18–22), as well as the active and wide-ranging roles that he performs in opening new franchises.  (*See id*. at 79:11–16.)  Purugganan also attested to the goodwill that he has earned as a master developer (*id.* at 49:20–22), and he cited awards and accolades he has received from the franchise community.  (*Id*. at 83:2–16.)  According to Purugganan, he has never faced a situation where he was unable to provide support to a franchisee and thus unable to receive his 2.5% commission.  (*Id*. at 39:5–10.)

However, in terms of the harm caused by the purchase of the Connecticut franchises by AFC, Purugganan's deposition testimony, similar to his declaration, fails to provide any concrete evidence of irreparable harm, beyond his own personal opinion that the transaction will threaten Purugganan's ongoing ability to develop franchises and will engender a competitive relationship with AFC in his territory.  He does not explain how or why such a result might obtain.  Rather, he surmises how current and prospective franchisees might react to the presence of corporate stores, what they might say, and how they might view him as a master developer.   For example, the Plaintiff testified:

> The divergence comes in with AFC trying to command the corporate store because then that would halting[sic] the growth.  Why would I open when I know a corporate store is coming in and then discontinue the whole thing?  I don't understand.  It doesn't make sense.
>
> How do I control the master territory when you've got a competing element with AFC corporate trying to expand and grow within my master territory?  It devalues all the efforts I've made with all the franchisees.

4

> A franchisee comes to me and says, I can't go grow because corporate made me come in here or it's protected by an AOP within corporate. How can that be? How can I compete with that?
>
> If we're trying to hire a physician – one of my franchisee[s] says they're interviewing with AFC corporate and they're growing there. How can that be?
>
> If we're doing some marketing, you think the marketing could be cohesive? It could be.
>
> When we're hiring people, I can have a medical assistant fighting for a corporate store versus one of our franchisees – it doesn't make sense. We have built that. I don't have any control and you're coming in – it doesn't make sense. That is my good will and I cannot tell my franchisees that I can do it. I cannot because a corporate store is coming in.

(*Id*. at 83:23–25, 84:2–25, 85:2–5.)   Similarly, in asserting that AFC's acquisition of the Connecticut franchises would diminish the Plaintiff's territory, the Plaintiff hypothesized, "When suddenly you take out a piece of area within my master territory, how can I sell that? How can I sell that to somebody who may want to come in?" (*Id*. at 126:23–35, 127:2.) When asked to clarify the basis for this conclusion, the Plaintiff testified:

> If AFC buys Danbury, for example, how else can I sell it to another franchisee for that area in Danbury or in Norwalk? There's an area of protection in Norwalk. How can I sell another franchisee a – they can go in there and not compete with AFC corporate on it. It doesn't make sense.

(*Id*. at 127:14–20.)[2]

Nor does Plaintiff provide any evidence-based explanation for how the mere ownership of the urgent care centers (which will operate within his territory whether owned by AFC or a franchisee) will negatively impact current or prospective franchisees. Although Purugganan asserts that he could not sell a franchise in a particular area if AFC was operating a corporate store there because the potential franchisee would not want to compete with AFC, he does not explain

---

[2] Though not clear, it appears the Plaintiff is lamenting the loss of a future revenue stream which might derive from the future sale of existing franchises if those existing franchises become corporate stores. While the Court recognizes this potential loss, the Court also determined that these types of losses are readily calculable and compensable through an award of money damages.

how the presence of a franchisee-owned center in the same area (the status quo he seeks to preserve) would not have the same impact on a prospective franchisee. Indeed, the recurring use of rhetorical questions in his testimony reveals the very heart of his difficulty in establishing, or even articulating, irreparable harm—it is based entirely on his own worst-case projections about what might or could happen were AFC to acquire franchises in his territory, as opposed to any concrete evidence that, for example, new prospective franchisees have in fact been deterred as a result of AFC's actions or that existing franchisees have actually been hindered in their growth in the way that Purugganan projects. *Cf. NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 246 (2d Cir. 2013) (declining to reconsider on appeal the Republic of Argentina's arguments regarding the alleged catastrophic consequences that would follow from an injunction, as "what the consequences predicted by Argentina have in common is that they are speculative, hyperbolic, and almost entirely of the Republic's own making").[3] Purugganan portends that the closing of this transaction will precipitate a chain of events that will frustrate his business efforts and lead to a decline in the number of new franchises he is able to open and service. Whether his prediction is accurate will depend on the decisions of third party franchisees, prospective franchisees, and even AFC—decisions which are yet to be made and cannot be known at this time.[4] *Cf. Raia v. Pompeo*,

---

[3] When asked if he had any evidence that AFC was not willing to work with him in terms of "marketing efforts, building the brand with support or anything along those lines" the Plaintiff answered "I don't know." (Pl.'s Dep. Tr. at 97:5–10.) At best, the Plaintiff could only offer his knowledge that AFC had approached other Connecticut franchisees who had declined AFC's offer to acquire their franchises in support of his contention that AFC intends to continue to grow and thereby diminish the Plaintiff's territory. (*Id*. at 95:11–18, 96:15–18.) The Plaintiff also cites the deposition of AFC President Randy Johansen, who testified that AFC does not intend to sell any master developer agreements in the next twelve months. (*See* Johansen Dep. Tr. at 73:19–23, 74:1–4, Pl.'s Ex. B, ECF No. 95-3.) But the testimony cited by the Plaintiff is insufficient to establish that AFC intends to compete with the Plaintiff in his territory at all, let alone in a manner that would eviscerate his business to an extent warranting the extraordinary remedy of a TRO.

[4] The Court does not take issue with the Plaintiff's contention "that 'major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury.'" (Pl.'s Br. at 5 (quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995)).) The problem is that the large-scale disruption to his business that the Plaintiff presages fails to rise beyond the level of his own speculation.

455 F. Supp. 3d 7, 14 (E.D.N.Y. 2020) (declining to issue mandatory preliminary injunction where the remedy sought "is too attenuated from the alleged irreparable harm because it relies on too many unknowns"). Courts have held that new evidence presented to the Court in connection with a motion for reconsideration must be "highly convincing," *see, e.g.*, *Musante v. USI Ins. Servs., LLC*, No. 3:16-CV-00799 (RNC), 2018 WL 442801, at *1 (D. Conn. Jan. 16, 2018) (quotation marks omitted), but Purugganan's deposition testimony merely reaffirms what was apparent from his initial submissions.

In addition, as the Court found in its initial decision, the alleged losses that Purugganan identifies appear to be calculable and therefore compensable via money damages. (*See* Decision at 9.) On this issue Purugganan cites *ASI Sign Sys., Inc. v. Architectural Sys., Inc.*, No. 98 CIV. 4823 (SAS), 1999 WL 553825 (S.D.N.Y. July 29, 1999), a case in which the district court issued a permanent injunction following a bench trial after concluding that the defendant had breached a franchise agreement by operating a sales office outside of its exclusive territory. In doing so the court found that legal remedies were inadequate because the plaintiff's "damages are difficult to calculate, as they include potential loss of sales of new franchises and of renewal fees for existing franchises." *Id.* at *8. The Court disagrees that this reasoning applies to the instant case, and the Court cited in its decision more recent Second Circuit case law that has disavowed a finding of irreparable harm where, as here, "the Plaintiff's business has a lengthy history of quantifiable profits" from which money damages can be calculated. (Decision at 9 n.6 (citing *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63–64 (2d Cir. 2011)).) [5]

For these reasons, the Plaintiff has not carried his burden of satisfying the strict standard applicable to motions for reconsideration. He cites no controlling case law that the Court

---

[5] And AFC is certainly on notice that the pending transaction is, in the Plaintiff's view, a breach of the MDA and that if the Plaintiff succeeds in this litigation, substantial monetary damages will be sought.

7

overlooked, and even countenancing his effort to present new evidence does not alter the Court's calculus.

**Conclusion**

For the foregoing reasons, Plaintiff's motion for reconsideration is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of December 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE