UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANILO PURUGGANAN, *Plaintiff*, | ) ) ) | No. 3:20-CV-00360 (KAD) |
| v. | ) ) | |
| AFC FRANCHISING, LLC, *Defendant.* | ) ) | AUGUST 16, 2023 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S *PARTIAL* MOTION FOR SUMMARY JUDGMENT (ECF NO. 188)**

Kari A. Dooley, United States District Judge:

Plaintiff Danilo Purugganan ("Purugganan" or "Plaintiff") brought this action against Defendant AFC Franchising, LLC ("AFC" or "Defendant") seeking, *inter alia*, injunctive and declaratory relief as well as monetary damages in connection with AFC's alleged breach of a Master Development Agreement ("the MDA") entered into between Plaintiff and AFC's predecessor-in-interest, Doctors Express Franchising LLC ("Doctors Express"). Plaintiff has moved for summary judgment as to liability only on Counts Two, Three and Four of the Second Amended Complaint. Defendant opposes the motion. For the reasons that follow, the motion is GRANTED in part.

**Legal Standard**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

1

(1986).

**Discussion**

The Court presumes the parties' familiarity with the lengthy procedural history of this case, to include the allegations in the Complaint and Counterclaims.

In brief, Plaintiff brought this action against Defendant seeking, *inter alia*, injunctive and declaratory relief as well as monetary damages in connection with AFC's alleged breach of the MDA entered into between Plaintiff and AFC's predecessor-in-interest, Doctors Express. As a Master Developer, Plaintiff recruits and develops urgent care center franchises within his territory on behalf of AFC as franchisor. He receives compensation for each urgent care center opened and operated within his territory. Plaintiff's original complaint sought to enjoin AFC's then-imminent plans to purchase and bring "in-house" several care centers within Plaintiff's territory, which Plaintiff alleged was a breach of the MDA.[1]

On April 9, 2020, AFC moved to dismiss the complaint for improper venue, asserting that the forum selection clause in the MDA, Section 19.7, required suit to be brought in Alabama, where AFC has its principal place of business.[2] Purugganan argued, in response, that the forum selection clause in the MDA was unenforceable. On May 13, 2020, the Court denied the motion to dismiss, concluding that the forum selection clause was not enforceable by Defendant against Plaintiff. *See* ECF No. 39. In so holding, the Court determined that the MDA did not require Plaintiff to bring suit in Alabama.[3]

---

[1] The Court denied Plaintiff's request for a Temporary Restraining Order to halt the purchases, finding that the Plaintiff had not established irreparable harm if the purchases were to go forward.

[2] AFC had already commenced a declaratory judgment action in Shelby County, Alabama seeking a declaration that Purugganan was required to file suit in Alabama under the same forum selection clause relied upon in the motion to dismiss. Purugganan removed that case to federal court in the Northern District of Alabama. AFC, for inexplicable reasons, did not seek dismissal in this case under the so-called "first to file" rule. As discussed *infra.*, that decision launched perhaps the most wasteful and expensive litigation strategy seen heretofore.

[3] AFC sought reconsideration of the Court's decision, *see* ECF No. 43, which the Court denied by Memorandum of Decision dated June 4, 2020. *See* ECF No. 51.

On May 27, 2020, AFC filed an Answer with Affirmative Defenses and Counterclaims. *See* ECF No. 49. At Count One of the Counterclaims, AFC sought various declaratory judgments, to include specifically that the forum selection clause of the MDA requires any litigation between the parties to be conducted in Alabama. At Count Two, AFC alleged a breach of the MDA arising out of Purugganan's commencement of litigation in Connecticut instead of Alabama. And at Count Four, AFC alleged intentional interference with business or contractual relations.

On March 3, 2021, Plaintiff moved for judgment on the pleadings with respect to the Counterclaims. Specifically, Plaintiff asserted that each of Defendant's counterclaims relied on the enforcement of the forum selection clause of the MDA, which this Court had already determined is unenforceable to the extent it required this litigation to be commenced in Alabama. The Court agreed with respect to Count One, granting judgment on the pleadings to the extent it sought a declaratory judgment that the forum selection clause required the litigation to be brought in Alabama. As to Count Two, the Court observed that "[a]s was the case with Count One, Count Two is premised on the argument that Alabama is the required venue for this litigation under the MDA. If Purugganan is not bound to litigate in Alabama—which he is not—selecting a forum other than Alabama would not be a breach of the MDA." ECF No. 187 at 5.[4]

On September 22, 2021, Plaintiff filed a Second Amended Complaint. In Count One, Plaintiff again claims a breach of contract resulting from the now-completed purchase of urgent care center franchises within Plaintiff's territory. In Count Two, Plaintiff asserts a second breach of contract claim arising out of AFC's termination of the MDA in December 2020, by which Plaintiff was removed as a master developer for AFC.[5] In Count Three, Plaintiff asserts a breach

---

[4] The Court granted the motion as to Count Four for separate and distinct reasons having no bearing on the forum selection clause. *See* ECF No. 187 at 7–8.

[5] Counts Two and Three also include an allegation that AFC violated the implied covenant of good faith.

of contract claim for AFC's purported failure to pay royalties due to Plaintiff for December 2020 following the termination of the MDA. And in Count Four, Plaintiff seeks a declaratory judgment as to the seven separate allegations, most of which mirror the allegations in Counts One, Two and Three.

Plaintiff now seeks summary judgment as to Counts Two and Four of the Second Amended Complaint, largely for the same reason the Court granted the motion for judgment on the pleadings—the determination of the unenforceability of the forum selection clause. Plaintiff asserts that the Court's ruling resolves conclusively each of these Counts.[6] Plaintiff also seeks

---

[6] The tortured history of this case and the parallel litigation in Alabama must be noted, as it provides context for the instant motion and explains, in part, the delayed adjudication of the instant motion. At the same time AFC moved to dismiss this action for improper venue, Purugganan moved to dismiss the Alabama action on the grounds that the Alabama court did not have personal jurisdiction over him. *See AFC Franchising LLC v. Purugganan*, 2:20-cv-00456-JHE (N.D. Al. 2020) at ECF No. 3. Under a different analysis than that employed by this Court, Magistrate Judge England of the Northern District of Alabama concluded that the forum selection clause did not amount to Purugganan's consent to the jurisdiction of Alabama courts and dismissed the action for lack of personal jurisdiction. *See id.* at ECF Nos. 32 & 33. AFC appealed this decision to the Eleventh Circuit Court of Appeals.

On February 5, 2021, AFC moved to stay this action pending a decision by the Eleventh Circuit. *See* ECF No. 119. Therein, AFC sought to avoid the possibility of unnecessary and/or duplicative litigation if the Eleventh Circuit reversed the decision of the Northern District of Alabama and concluded that the forum selection clause rendered Purugganan properly subject to jurisdiction in Alabama. Such a ruling, AFC argued, would serve to reinstate the Alabama litigation, which raises many of the same issues to be adjudicated here.

Following oral argument on the motion to stay (*see* ECF No. 134) a *de facto* stay occurred because the parties agreed to a referral to then-Magistrate Judge, now-Circuit Judge Merriam for the purposes of attempting to resolve the case. The Court then held a telephonic status conference on March 18, 2021, during which it was determined that the Court would hold the motion to stay in abeyance, as well as the adjudication of any other outstanding motions, pending the conclusion of the parties' settlement efforts with Judge Merriam. *See* ECF No. 141. On June 7, 2021, Plaintiff moved, with Defendant's consent, to extend the Scheduling Order in light of the parties' ongoing settlement efforts, *see* ECF No. 161, which the Court granted. *See* ECF No. 163. On July 20, 2021, the Court held another telephonic status conference, during which the parties expressed their optimism regarding the possibility of settlement and agreed to conduct the deposition of the Plaintiff's expert while they simultaneously continued to pursue a joint resolution. *See* ECF No. 168. Following the conference, on July 30, 2021, Defendant, with the consent of Plaintiff, moved for another extension of the Scheduling Order, *see* ECF No. 172, which the Court granted—thereby extending the discovery deadline to November 10, 2021. *See* ECF No. 173. The Court then held another telephonic status conference on August 17, 2021, at which the parties agreed to a final extension of the discovery deadline to November 30, 2021. The parties also agreed that Defendant would disclose its expert(s) by September 21, 2021, and that Plaintiff would have 30 days thereafter to complete expert depositions. The extension also allowed for the potential need for additional discovery, which was contingent on the outcome of motions then-pending before Magistrate Judge Richardson. At the August 17, 2021 status conference, the Court informed the parties that it would turn its attention to the pending motions unless and until the case was reported settled. *See* ECF Nos. 177 & 178.

Thereafter, Purugganan filed the instant partial motion for summary judgment.

summary judgment as to Count Three insofar as AFC had conceded that it did not timely pay commissions owed under the MDA for December 2020.

Under Maryland law,[7] to prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Here, the parties do not dispute that the MDA was an enforceable, binding contract between the parties. The dispute is whether AFC breached the MDA as alleged.

---

On August 11, 2022, the Eleventh Circuit Court of Appeals reversed the judgment of the District Court and held, under Eleventh Circuit precedent, that the forum selection clause was enforceable against Purugganan as a consent to jurisdiction in Alabama. *See AFC Franchising, LLC v. Danilo Purugganan*, 20-13849 (11th Cir. 2020) at ECF No. 45. The Eleventh Circuit also determined that venue for the Alabama action was in Shelby County, which is within the Northern District of Alabama. The mandate issued on September 9, 2022. *See id.* at ECF No. 47. Upon remand, Purugganan filed an Answer and Counterclaims, which largely mirrored the claims asserted in the Second Amended Complaint in this litigation.

After the Eleventh Circuit's decision, AFC filed a motion to transfer this action to the Northern District of Alabama under the Second Circuit's "first to file" jurisprudence. *See* ECF Nos. 205 & 206. While that motion was pending, Magistrate Judge England ordered briefing on the question of whether the Court should decline to hear AFC's declaratory judgment action, as is within its discretion under 28 U.S.C. Section 2201. Judge England's briefing order also raised the potential for a transfer of the Alabama case to this Court. On January 24, 2023, Judge England ordered the Alabama case transferred to this Court. *See AFC Franchising LLC v. Purugganan*, 2:20-cv-00456-JHE (N.D. Al. 2020) at ECF Nos. 49 & 50. AFC sought reconsideration of that decision and sought a stay pending adjudication of the motion to reconsider. *See id.* at ECF Nos. 51 & 54. On March 8, 2023, Judge England denied the motion for reconsideration, and the case in the Northern District of Alabama was transferred to this Court on March 9, 2023. It is docketed as *AFC Franchising, LLC v. Purugganan*, 3:23-cv- 00313 (KAD). Following receipt of the Alabama case, this Court denied the motion to transfer the case to the Northern District of Alabama on March 31, 2023. *See* ECF No. 226. AFC then filed a writ of mandamus at the Eleventh Circuit, seeking an order directing the district court to request a return of the Alabama case from this Court to the Northern District of Alabama. *See AFC Franchising LLC v. Purugganan*, 2:20-cv-00456-JHE (N.D. Al. 2020) at ECF No. 58. After briefing, the Eleventh Circuit denied the writ of mandamus on July 14, 2023. *See In re: AFC Franchising, LLC*, 23-10756 (11th Cir. 2023), at ECF No. 17.

The Court includes this dual history because the arguments advanced at each stage of the Alabama litigation derived from the inconsistency between this Court's decision that the forum selection clause was unenforceable and that of the Eleventh Circuit, which held that the clause was enforceable and that Purugganan had consented to personal jurisdiction in Shelby County, Alabama. The Court acknowledges that while the appeal to the Eleventh Circuit was pending, this Court indicated that if the Eleventh Circuit reversed Judge England's decision regarding the forum selection clause, this Court would honor that decision and transfer this matter to the Northern District of Alabama, notwithstanding this Court's differing opinion. However, upon remand from the Eleventh Circuit, Judge England immediately raised the specter of a declination of jurisdiction to issue a declaratory judgment or, alternatively, to transfer the litigation to this Court. As that transfer has already occurred, and the writ of mandamus has been denied, the Court saw no basis upon which to transfer the case nor, as discussed *infra.,* to give force and effect to the Eleventh Circuit's decision.

[7] The Court previously determined that disputes arising under the MDA were governed by Maryland law. *See* ECF No. 127.

5

*Count Two: Breach of Contract*

In Count Two, Plaintiff alleges that AFC breached the MDA when it improperly terminated the MDA on the ground that Plaintiff himself violated the MDA by commencing this litigation in Connecticut instead of Alabama. Plaintiff argues that because he was not required to commence the litigation in Alabama, his failure to do so cannot be a breach of the MDA, nor a basis upon which to terminate the MDA.

Plaintiff is correct that this Court has already held that Plaintiff was not required to commence this action in Alabama when it ruled that the MDA forum selection clause was not enforceable against Plaintiff. This decision is entitled to law of the case deference.[8] Notwithstanding, AFC argues that simply because this Court has determined that the lawsuit was not required to be brought in Alabama, does not mean, necessarily, that suing in Connecticut was not a breach of the MDA. While the Court has no quarrel with this observation generally, the argument cannot defeat summary judgment. There is no genuine issue of material fact as to the reason the MDA was terminated. AFC terminated the MDA because Plaintiff *failed to file in Alabama,* not because he filed suit in Connecticut. Thus, the Court rejects AFC's argument that

---

[8] The law of the case doctrine, although not binding, generally provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case,'" unless compelling reasons counsel otherwise. *Musacchio v. United States*, 577 U.S. 237, 245–46 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013); *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (purpose of doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit") (citation and internal quotation marks omitted). The compelling reasons that would support deviation from the law of the case doctrine are the same reasons that would warrant reconsideration of a prior decision, namely, an intervening change in the law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008). The doctrine is properly applied only when the parties have had a full and fair opportunity to litigate the initial determination. *See Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 219 (2d Cir. 2002). Here, AFC asks this Court to reconsider its decision based on the decision of the Eleventh Circuit that found the forum selection clause to be enforceable, serving as Plaintiff's consent to jurisdiction in Alabama. The Court declines to do so. In rendering its contrary decision, this Court applied applicable Second Circuit precedent and remains of the opinion that the decision was correct under that precedent. And as Judge Tjoflat observed in his concurrence, the Second Circuit test for assessing the enforceability of a forum selection clause is "materially different from this Court's test." *AFC Franchising, LLC v. Purugganan,* 43 F.4th 1285, 1301 (11th Cir. 2022) (Tjoflat, J., concurring).

even if this Court has determined that Alabama was not the exclusive venue, it has not held that Connecticut is a proper venue.[9]

Defendant, both here and in Alabama, has repeatedly and consistently taken the position that Alabama provided the exclusive venue for this litigation. Counsel repeated this position at oral argument on the instant motion. It cannot now, when seeking to avoid the import of the Court's prior ruling, walk back that position on the theory that some jurisdiction—other than Connecticut—might have been required, rendering this litigation a breach of the MDA. Indeed, in AFC's Local Rule 56(a)(2) Statement ("LRS"), it again puts forth the argument that the forum selection clause required suit to be brought in Alabama. *See* Def. LRS, ECF No. 194, at ¶ 18 ("Section 19.7 of the MDA contains what is commonly referred to as a "floating" forum selection clause, which, while it does not name a specific venue for litigation, designates that litigation should be commenced **in the jurisdiction of franchisor's principal place of business."**); *see also* Def. Answer and Counterclaims, ECF No. 49, at ¶¶ 13, 18 & 19; *AFC Franchising LLC, v. Danilo Purugganan*, 3:23-cv-00313 (KAD), Compl., ECF No. 1 Ex. 1, at ¶ 16.[10]

As the Court has already held that Plaintiff was not required to file the lawsuit in Alabama, his failure to do so is not a breach of the MDA and cannot provide a valid basis for Defendant's termination of the MDA. As Plaintiff's alleged breach is the purported basis upon which AFC terminated the MDA, the termination was not justified, and therefore was itself a breach of the MDA.[11] The motion for summary judgment as to liability on Count One is

---

[9] The Court has never been asked to opine whether venue in Connecticut is proper and need not do so herein.

[10] Indeed, principals of judicial estoppel may well preclude this argument. *See Clark v. All Acquisition, LLC,* 886 F.3d 261, 265 (2d Cir. 2018) (noting that the doctrine of judicial estoppel functions "generally to bar litigants from taking inconsistent positions in successive suits").

[11] At oral argument, for the first time, Plaintiff also argued that the exclusive bases for terminating the MDA are found in Paragraph 16 of the MDA, and that nowhere in Paragraph 16 is a breach of the forum selection clause identified as a basis to terminate the MDA. In light of the Court's decision *infra*, the Court need not reach this argument. Plaintiff also relied upon the termination letter itself, which cited Paragraph 16.3 as the authority for the termination. Paragraph 16.3

GRANTED in part. Although also urged by Plaintiff, the Court finds a genuine issue of material fact as to whether Defendant violated the implied covenant of good faith and fair dealing when it terminated the MDA.

*Count Three: Breach of Contract*

This claim arises out of the purported failure of Defendant to timely pay Plaintiff royalties earned during the month of December 2020, the same month in which the MDA was terminated. There is no dispute that under the terms of the MDA, Plaintiff was entitled to receive, as royalties, 2.5% of the gross sales of each of the urgent care franchises within his territory. Nor is there any dispute that the royalties were to be paid by the fifteenth day of the month following the month in which the royalties were earned. The parties agree that royalties earned by Plaintiff during December 2020 were required to be paid by January 15, 2021. Nor is there any dispute that the royalties were not timely paid. After the instant motion was filed, Defendant paid Plaintiff approximately $80,000.00, which it represented to be the royalties due and owing. As there is no dispute that the payment was not timely under the MDA, the motion for summary judgment as to liability only as to Count Three is GRANTED in part. *See Taylor,* 365 Md. at 175 ("It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.") Again, although urged by Plaintiff, the Court finds a genuine issue of material fact as to whether Defendant violated the implied covenant of good faith and fair dealing when it failed to pay the royalties in a timely fashion.

*Count Four: Declaratory Judgment*

Lastly, Plaintiff seeks partial summary judgment as to Count Four. He seeks a declaration

---

permits termination when a Master Developer fails to meet his production schedules, which AFC now admits was not an issue. Given the ambiguity in the letter and the conflicting factual positions of the parties, the Court need not address this issue either.

that Plaintiff's commencement of litigation in this District was not a breach of the MDA justifying termination, and that Defendant's termination was not justified, and therefore a violation of the MDA.

Pursuant to 28 U.S.C. § 2201, whether to declare the rights and legal obligations of the parties is within the broad discretion of the court. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023). As recently held by the Second Circuit:

> Even in circumstances "when [a declaratory] judgment [would] serve a useful purpose in clarifying and settling the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *Cont'l Cas.*, 977 F.2d at 737 (citing *Broadview*, 417 F.2d at 1001), district courts retain "broad discretion" to decline jurisdiction under the DJA, *Niagara Mohawk Power*, 673 F.3d at 106 n.7. We further clarify that the following considerations, "to the extent they are relevant" in a particular case, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014), should inform a district court's exercise of such discretion: (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy," *Niagara Mohawk Power*, 673 F.3d at 105 (citations omitted); and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction, *Reifer*, 751 F.3d at 141, 149 (citation omitted); *see infra* note 10 (collecting additional cases applying this factor).
>
> Inherent in district courts' "broad ... discretion" to decline jurisdiction under the DJA, *Dow Jones*, 346 F.3d at 359, is a similarly broad discretion to weigh the factors we have enumerated here. Thus, no one factor is sufficient, by itself, to mandate that a district court exercise – or decline to exercise – its jurisdiction to issue a declaratory judgment. Likewise, "[t]hese factors are non-exhaustive," *Reifer*, 751 F.3d at 146, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether "the normal principle that federal courts should adjudicate claims [over which they have] jurisdiction" should "yield[ ] to considerations of practicality and wise judicial administration" in a particular case, *Wilton*, 515 U.S. at 288, 115 S. Ct. 2137.

*Id.* at 99–100.

Under these directives, and having considered each of these factors, the Court sees no

useful purpose to be served by the declaratory relief sought, as it is wholly duplicative of the issues already resolved or to be resolved through the substantive causes of action being litigated. The Court therefore declines to exercise its jurisdiction over the request for a declaratory judgment. Count Four is DISMISSED.

**Conclusion**

For the foregoing reasons, and in accordance with the above, the Plaintiff's motion for *partial* summary judgment (ECF No. 188) as to liability only is GRANTED in part and DENIED in part. Count Four is DISMSSED.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of August 2023.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE